We move to the fourth case this morning. Johnson v. Kriegel. Counsel. Morning. May it please the court, Michael Ashby was not able to attend her son's performances with the Logue Elementary School Choir for its 2014 and 2015 Christmas concerts because the venue where the concerts were taking place, a multi-story building without an elevator or a ramp, was not accessible to her, a person with a disability. Even though this activity was taking place off of school ground, the performance of the school choir, a recognized extracurricular group led by a teacher with a principal in tow, was a service, program, or activity of the school. And the district court's decision to the contrary is erroneous and must be reversed. It's clear that under the ADA and the Rehabilitation Act that the notion of services, program, or activity encompasses anything a public entity does, as this court noted in quoting the regulations, including, as 504 statute says, all the operations of a local educational agency. There is no doubt here that the school choir, as I said, a recognized extracurricular activity directed by a teacher and meeting in the school weekly to rehearse and plan its concerts, was at that time an activity of a public entity. Indeed, the regulations of the school system indicate that extracurricular activities are considered an integral part of the school corporation's education program. When the school determined to take its show on the road, as it were, and go to the Warwick County Museum for the Christmas concerts, it didn't change the fact that this was still a school, service, program, or activity. The school system seems to concede, as I believe it must, that if in fact there was a formal contract where the school system negotiated with the museum for this otherwise empty space to hold its concert, that that would then become a service, program, or activity. Could you tell us a little bit about the arrangement between the school district or the school and the museum? Was there a contract, an agreement? What kind of situation was there? How was that developed in the record? The record indicates, Your Honor, that the museum offered its space, beginning in 2010, to groups from the school, individual groups. They would come for their concert. It would be, in this case, the day for the Logue Elementary School concert. The museum would advertise that, but the school would also advertise it. All the parents of the students in the choir would get an invitation. We have in the record the calendar from the school which lists the choir. Therefore, there was clearly a mutual understanding. This is a program for the museum to get people to come into the museum, particularly at that age, at that age level. Well, the museum certainly had a reason for doing this, but the school had a reason for doing it, too. On the night of the performance, this was the performance, the Logue Elementary School Choir. As we say in our brief, any one of us who's had children or grandchildren, these sort of things, we know that's a command performance. We want to be there because it's the time for the students to show off what they've been learning all year in this extracurricular activity. Which is why the museum wanted them there, too. Certainly. It was certainly a mutual, dependent relationship. I think we could probably argue there was some sort of oral contract, but we don't have to worry about that because under the Rehab Act and the ADA, it's quite clear that a public entity may not engage in indirect discrimination through contract, through licensing, or through other arrangements. You're talking about 35.130, the regulation? Yes, sir. This was clearly an other arrangement. This was an arrangement, benefited the museum, there's no doubt about that, but it benefited the school, and it was a school event. So this was at least a service provided by the school district to the museum, if nothing else. Yes, but I would also argue, Your Honor, that it remained a program or activity of the school. I understand. And you read this regulation as an effect saying you can't aid and abet a violation of the ADA, is that what you're saying? Well, that's correct. And you cannot, in essence, subcontract or sub-other arrangement the requirements of the ADA. You cannot say, as the school superintendent admitted, we don't even look. When our kids are going, at least at this point in time, even on a field trip, we don't even ask whether it's accessible or not. Now, there isn't a lot of case law on this, is there? No, there's not, Your Honor. Applying this regulation. No, there's not, Your Honor. And this is a regulation of the Department of Justice, is that correct? Yes, Your Honor. Do you see any impairment or reason why we shouldn't ask them to enter the case as an amicus? I mean, it sounds like the United States government has a very important interest in the case. That's something that has not been brought up. I obviously am not in a position to argue it's an amicus. Judges just got the briefs two and a half years ago. I don't have a chance to talk to you about this. I understand. I think the thing to remember is that we're dealing with a statute which is broadly construed to protect persons with disabilities. And what we have here is a situation where we have a recognized extracurricular activity, integral to the educational function, being taken so that this performance can occur in another facility. Well, integral to the educational function is the one that's the low, compared to the, of course, the obvious thing is that the museum's not a part of the lawsuit. Do we know about any exemptions that the museums have? Yes, Your Honor. A museum would be a place of public accommodation under Title III of the ADA, not Title II, not a public entity. The museum actually is a former public school that was decommissioned, so it's small counties. Exactly, and under Title III there is a rather robust defense, not necessarily present in Title II, for a substantial alteration of an older facility. The museum was able to finally put a elevator in almost a year, I guess, in September after the December 2015 Christmas concert, but the museum is not a party because this was an activity of the school and it was incumbent upon the school to protect the rights of eligible persons with disabilities, as Ms. Ashby certainly is. So you touched on this with the calendar. Does the record say anything other than the calendar in terms of advertising? Was the museum passing out flyers? Were there posted posters around the town? The museum sent stuff to the local newspaper and at least in 2014 we found, just on the internet, a posting in a 4-H circular indicating these are the performances. The school, we know, did post it on their calendar and did send home notes with the parents, to the kids, for the parents saying that this event was occurring, that the kids who were actually performing, but it was on the general calendar. They'd need transportation there because the school wasn't giving it. The school was not giving transportation because it was at 6 p.m., but it was a the parking lot was full and it was, I assume, what we all recognize as a typical holiday-type program when our kids are involved. And your responses to Judge Bannon's question is that this was really promoted by the museum as to get the museum more promoted, I would say, this particular incident, than through the school. I don't know. I don't know how else the school can promote other than put on its calendar. Well, the same way, in newspaper articles and online. I think, as I said, this is a mutual thing on both sides and that... There's no question there's a mutual benefit. Right. But we do believe that... So many ways you characterize them as really co-actors in this thing? Yes, yes, Your Honor. I mean, clearly the kids have been rehearsing all year. They had routines, they had songs, they dressed up. This was a big deal, as you could imagine, for an evening concert like this. Tell me, I wasn't clear, Mr. Falk, in the record. Did only one school perform on a given night? Yes. So there were several of these? Exactly. There was an open invitation that went out to the various choirs of the elementary schools, but on this particular night, for those two years, it was only the Logue Elementary School Choir. I see. It was a service program or activity of the school and, therefore, the district court should reverse and the case should be remanded. Thank you. Thank you, counsel. Mr. Blevins? Ms. Blevins? May it please the court, my name is Sarah Blevins and I represent the Ward County School Corporation in this matter. The district court's ruling in favor of the school on summary judgment should be affirmed for multiple reasons. The first of which is that the threshold issue answered by Judge Young about whether or not the museum's fundraising event was a service program or activity of the school. And in making that determination, what is important to do is look at what was provided by the school, and that is borne out in the regulations that apply to the ADA. 28 CFR section 35.102 says that the ADA applies to service programs or activities provided or made available by public entities. So what was provided by the school here? What was provided by the school was a community service opportunity for its students and a performance opportunity for its students, performance experience, that is distinct to what the museum provided in this circumstance. The museum provided the public component of this activity, and that is the key distinction when we're talking about... And that characterization is very important to your case, right? It is critical to our case, yes. So we have to accept that or you've got real problems. In terms of who opened it up to the public. If we say that you're a co-contractor with the museum, you've got a problem. If there was a contractual relationship, then there is a problem. That is not what happened here. If you look at the regulation that talks about the contractual relationship, if you read those words together in the phrase, what they're talking about is a close relationship, and that's borne out in the Ivy case that the Fifth Circuit decided that you're looking at a contract-like relationship. What was the relationship? The relationship here was the school was a guest of the museum. This wasn't akin to a joint venture of entertainment for the museum's benefit, so that the museum could promote its own organization, so it could draw people in for the purpose of getting visitors to the museum, and also because they were soliciting donations for the museum. School didn't get any of those donations. This was a fundraising event for the museum. This was a voluntary, you show up, maybe give a dollar and go in, I mean there was no ticket price. Correct, correct, that's correct. And the museum served cookies and punch, and was generally the host of this event. And it's also important to look at in the context of what else was going on at the museum during this time of year. The advertisement that the museum put out, which is in the record, talks about holiday happenings at the museum. It includes multiple performances by local schools, and says children's choirs will be coming to perform. It also talks about their holiday bazaar, their festival of This was part of a broader scheme to draw the community into the museum, to promote the museum. And in... Particularly focused on grade school, middle school, not always, but that age range. For the choirs, yes. The high school performed, and several elementary schools performed, so the entertainment portion, yes, was children's groups. I think in the state system there's a historical aspect that comes up in the middle school, right? And that necessarily, you don't have to answer that question. I think that's right. So if you're looking at it in the broad scope of what the museum was doing, it was clear that this was the museum's program, and again what is critical in this case is who opened it up to the public. It wasn't the school. There was a mention of it in the calendar, but it's not worded as an event. There are things like the dental mobile will be there, the book mobile. There are ice cream days at the school. These aren't all events that are open to the public, it's just things that are going on in the school. Can you help me with this? I'm looking at regulations 35.130, and it's... I'm sorry, it says a public entity... A public entity in providing any aid, benefit, or service may not directly or through contractual licensing or other arrangements on the basis of disability deny a qualified individual with a disability the opportunity, etc., to perform a service, and at least indirectly, through an arrangement with the museum, did impair the ability of some of the audience to attend. For two reasons, Your Honor. First of all, it would require a close relationship akin to an agency or contractual relationship. Where do you find the authority for that? By the to go far field and say the other arrangement can be something that it doesn't look like a contractual... If I may interrupt you, I think you've hit... put your finger right on the thing that's bothering us, right there. There's a... somewhere the... what kind of an arrangement gets to be very important here, doesn't it? It does, it does. We don't want to restrict the state... we don't want to restrict the scope of a statute that has to be... we're told it has to be at the same time, we don't want to get folks like your clients in trouble by extending it too far, where you really don't have control of things. Wouldn't you say that's basically the problem? That's exactly the problem. And that's what the reg's trying to deal with here in language. The other issue with that regulation is it begs the ultimate question of whose program, service, or activity was the public component of this event, and because it was held open by the museum, it wasn't the school providing the public component. And your brother's point in his brief on that one is no singing, no program. That's true, but also it didn't have to be at the school. It could have been the local barbershop quartet. This event didn't happen because of the school. But it was the school. It was the school, but it didn't happen because of the school, it happened because of the museum. And the program was geared so that it was going to be mom and dad and us grandparents showing up, right? It was open to the public at large. It was. I'm sorry, I didn't mean to interrupt you. Please. What do you think of the possibility of our asking the Department of Justice to get in this case and tell us what this... Congress specifically said that they had to write this regulation. We have some obligation to defer to whatever this means, right? Yes, and I haven't seen that happen in another case, and because the propriety of this is an interpretation issue. I don't know if that would be necessary, but certainly that's what... It's an interpretation issue. It is, yeah. It's an interpretation issue. Yeah, we're not disputing their authority to issue it or anything. Correct, correct. Thanks for your time. Actually, in these circumstances, either party could have said, well, the museum could have said, something's come up and we don't have enough people to take care of you that night, so we're going to have to cancel that, or the school could have said the same thing. There's nothing to be gained or lost by either party. Right, there's no obligation for it to occur. They were invited. They were guests at the museum's program. Even presuming that this court were to find that the museum fundraising event was an activity of the school in its entirety, including the public component, there are still several other issues with plaintiff's claim. The most important of which, I think, is the reasonable accommodation issue, because there were really only two options here for what could have been done, and neither of which is a reasonable accommodation. The first, of course, is don't accept the invitation. But the problem with that is that isn't actually an accommodation, because then Ms. Ashby couldn't participate in a program that wasn't happening, and that certainly is a fundamental alteration of the program to not have it at all. The second option was to have the program elsewhere at an accessible venue, but the problem is that, number one, the museum wasn't going to agree to have the museum's event somewhere else, and also this wasn't a performance that was going to happen anyway and just happened to happen at the museum. There was no plan to have this performance otherwise. The only reason the school had it is because they were invited by the museum. So by moving it, you would fundamentally alter it and also require the school to create an activity that wouldn't otherwise occur, and that's simply not a reasonable accommodation and not required by the law. So that would become an issue. What do you do in this circumstance? There is no reasonable accommodation available. At least at the time. Apparently it looks like about a year and a half later you accommodated it. The museum installed an elevator. The museum did. Yes, and that was the museum's doing entirely. Not the school. Right, not the school. No, the school has no control or obligation over the architecture of the museum. I see I only have 15 seconds remaining, so if there aren't any more questions, I'll see the retainer. I don't think so. Thank you very much, Counsel. Thank you. We would urge this court not to go beyond reversing the district court on the one point it decided, which was the program service activity point, but if it does go further, clearly the Supreme Court in Tennessee v. Lane in quoting the relevant statute recognized that a public entity may comply with Title II by relocating services, and having rehearsed for a semester their Christmas songs and Christmas skits, or jokes I guess, the school could have easily relocated this concert to an evening at the school which is accessible for the parents and grandparents to see the children perform. Thank you. Thank you, Mr. Falk. Thanks to both counsel and the cases taken under advisement.